RENDERED:  JANUARY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0369-ME

KEVIN MILES                                                         APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE A. CHRISTINE WARD, JUDGE
ACTION NO. 15-D-501481-002

ALLISON MILES                                                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND TAYLOR, JUDGES.

EASTON, JUDGE:  Appellant, Kevin Miles ("Kevin"), *pro se*, appeals from the

Jefferson Family Court's Order extending a Domestic Violence Order ("DVO")

against him for an additional three years at the request of the Appellee, Allison

Miles ("Allison"), on behalf of their two children.  Kevin argues the family court

erred because it did not appoint a Guardian *ad Litem* ("GAL") for the children.  He

further argues the family court abused its discretion by admitting into evidence an

incomplete summary report created as part of a custody evaluation. He finally claims Allison has improperly used the DVO process to gain an advantage in the parties' divorce in which custody is to be determined. After a thorough review of the record, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

The parties were married in 2014. Allison filed her first DVO petition against Kevin in 2015, prior to the parties' children being born. Kevin's actions from this incident led to a charge for Assault 4th degree,[1] to which Kevin pled guilty. Because he was on probation at that time, Kevin was incarcerated for approximately ten months. Allison did not appear at the DVO hearing after the issuance of an Emergency Protective Order ("EPO"). Kevin was in jail at that time. That DVO petition was dismissed. After Kevin was released from custody, the parties reconciled, and their children, twins, were born in 2019.

In September 2020, Allison filed both her petition for dissolution of marriage[2] and her second DVO petition against Kevin. The family court held a hearing in November 2020. The family court then issued a three-year DVO, protecting both Allison and the parties' children. There was no appeal of the initial DVO. In the dissolution case, the family court entered an agreed order dissolving

---

[1] Kentucky Revised Statute ("KRS") 508.030, Class A Misdemeanor.

[2] Civil Action Number 20-CI-502208, Jefferson Circuit Court.

the marriage between Allison and Kevin in late 2022. But issues of child custody were reserved for future determination.

In September 2023, Allison filed a motion to extend the DVO for an additional three years. The family court extended the DVO for six months and continued the hearing on the extension motion to March 2024. The family court ordered completion of a custody evaluation, which was also pertinent to the custody issues in the separate custody action.

The family court conducted a hearing on Allison's extension motion on March 14, 2024. Kevin was represented by counsel at this hearing, the same counsel who had represented him in the 2020 proceedings. Kevin indicated he had no objection to the family court extending the DVO regarding Allison, but he did object to it being extended for the children.

During this hearing, it was revealed that the custody evaluators terminated their interviews with Kevin before being able to complete the evaluation. The evaluators terminated the second interview due to Kevin's repeated inappropriate and hostile behavior. One of the evaluators, Dr. Marvin, testified at the hearing. Before her experience with Kevin, Dr. Marvin had not withdrawn from an evaluation due to behavior of the person evaluated in over twenty years. The only other time she had ever done so in her entire career was

-3-

because of threats by a gang member, who had located Dr. Marvin's children and threatened to kill them if her evaluation was not favorable.

Dr. Marvin testified she and her colleague still created a 48-page report regarding Kevin, but it was admittedly not complete as a custody evaluation. She indicated Kevin had 17 risk indicators for domestic violence. But she stressed that she was not able to take any mitigating factors into account because Kevin's behavior caused the termination of the evaluation process.

Kevin made several objections throughout Dr. Marvin's testimony, which were overruled, as the family court correctly believed the testimony to be relevant. Kevin additionally objected to Dr. Marvin's report being entered into evidence, which the family court also overruled. The family court indicated she "understands the limitations" of the report but believed the report had a proper foundation and was relevant to the issue of risk of domestic violence to the children.

In addition to Dr. Marvin, Allison testified. Kevin's current wife, Rachel, testified on his behalf. Kevin did not testify. The family court took the matter under submission, and it entered an Order on March 20, 2024, extending the DVO for three additional years covering both Allison and the children. This appeal follows. Additional facts will be discussed as they become relevant to our analysis.

## STANDARD OF REVIEW

A review of a trial court's decision regarding entry or continuance of a DVO is limited to "whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010). Likewise, the admission of evidence is reviewed for abuse of discretion. *Sanchez v. Commonwealth*, 680 S.W.3d 911, 920 (Ky. 2023). "Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious." *Dunn v. Thacker*, 546 S.W.3d 576, 578 (Ky. App. 2018). A trial court's findings of fact are not clearly erroneous if supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Questions of law are reviewed *de novo*. *Jones v. Jones*, 617 S.W.3d 418, 423 (Ky. App. 2021).

## ANALYSIS

As an initial matter, Kevin's brief does not comply with the Kentucky Rules of Appellate Procedure ("RAP"). Specifically, his brief is not compliant with RAP 32(A)(4), which requires "a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." "When an appellate advocate fails to abide by the appellate briefing rules, this Court has the option to: (1) ignore the deficiency and proceed with the review; (2) strike the brief or its offending portions; or (3) to review the issues raised in the brief for manifest injustice only, if the briefing deficiency pertains to

-5-

the appellant's statement of preservation of error." *Swan v. Gatewood*, 678 S.W.3d 463, 469 (Ky. App. 2023), *review denied* (Dec. 6, 2023). One of Kevin's claims, the failure to appoint a GAL, clearly has not been preserved. Rather than conduct no review of that issue, we have elected to review that claim for manifest injustice only.

Kevin claims the family court erred by failing to appoint a GAL for the children as required by *Smith v. Doe*, 627 S.W.3d 903 (Ky. 2021). He additionally argues it was error to admit Dr. Marvin's report into evidence. Finally, he claims Allison only pursued a DVO in order to gain an advantage in the parties' custody action, which appears to still be ongoing. We will address these arguments in a different order than that presented by Kevin.

Domestic violence orders are governed by KRS Chapter 403. In order to enter a DVO, a family court is required to find by a preponderance of the evidence that domestic violence has occurred and is likely to occur again. KRS 403.740. "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Dunn v. Thacker*, *supra*, at 580. "The definition of domestic violence and abuse, found in KRS 403.720(1) [now KRS 403.720(2)], includes 'physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse,

-6-

or assault between family members.'" *Abdur-Rahman v. Peterson*, 338 S.W.3d 823, 825 (Ky. App. 2011).

In part based upon the renewal of the DVO process at the same time as the filing of the divorce and custody action, Kevin argues that "Allison has used the DVO process to circumvent the rule of law to exploit a loophole that joint custody is void if one party claims domestic violence using KRS 403.270(2)(g) and KRS 403.315."[3]  First, we do not see where joint custody has yet been awarded in the custody action.  Regardless, provisions to address domestic violence often overlap with custody determinations.  Family courts must exercise caution when a DVO is sought while custody has been or is being determined in another proceeding.  This is necessary to avoid abuse of the system.

Even so, the DVO process addresses concerns not always presented during custody determinations.  On this record, we cannot say that an established need for an extended DVO was an abuse of the system.  Essentially, it appears that what Kevin is really challenging is the sufficiency of the evidence to support an extension of the DVO for the children.

Kevin made much of the fact that he had not physically harmed Allison since 2015, which Allison conceded.  He has also never hit the children. But "domestic violence" includes "the infliction of fear of imminent physical

---

[3] Appellant Brief, Page 4.

injury." KRS 403.720(2)(a). Allison put forth more than adequate evidence to support her fear of Kevin, for herself and for her children, both in her testimony in 2020, her testimony during the extension hearing, and with Dr. Marvin's testimony during the extension hearing.

Kentucky case law is clear that a petitioner is not required to show "proof of additional acts of domestic violence before extending a DVO." *Cottrell v. Cottrell*, 571 S.W.3d 590, 592 (Ky. App. 2019). "Rather, the absence of additional actions of domestic violence is merely one factor which the court may consider in deciding whether to extend a DVO. The trial court may consider all facts and circumstances, including the nature, extent and severity of the original acts of domestic violence, in finding that there is a continuing need for the DVO." *Id.* (citations omitted).

In fact, due process does not require an evidentiary hearing for a petitioner to obtain a DVO extension. All that is required is an opportunity for the respondent to show why it should not be extended. *Kessler v. Switzer*, 289 S.W.3d 228, 231 (Ky. App. 2009). Kevin had that opportunity. Although he did not testify, his present wife did. She suggested that Kevin is not a threat to his children. She pointed out that Kevin has not been violent toward her or her children, who appreciate him as a father. Kevin is the biological father to one of her children.

Despite Kevin's evidence, there was adequate evidence to support the family court's finding that the DVO against Kevin was still warranted. Dr. Marvin testified that in her second evaluation session with Kevin he was hostile, controlling, and unable to control his anger. Kevin was also excessively vulgar in his language. Dr. Marvin described his behavior at one point as an "anger-fueled verbal rant."[4]

Dr. Marvin testified that Kevin mocked Allison and her continuing fear of him. He indicated no regret or remorse for his actions. Evidence was presented that a previous evaluator had also withdrawn prior to completing a custody evaluation for the same reasons Dr. Marvin expressed.

Allison testified that she is very concerned about Kevin's temper, because "not once, but twice, he has caused those custody evaluators to withdraw from the case. I should think that is quite indicative of his behavior when it regards the safety of the children and myself. He can't even control himself to make it through not one, but two custody evaluations."[5]

With respect to the evidence Allison presented, Kevin specifically claims the family court erred when it allowed Dr. Marvin's report to be entered into evidence. This issue was preserved. A prior written report from an expert is

---

[4] Hearing of March 14, 2024, VR at 01:33:58.

[5] Hearing of March 14, 2024, VR at 03:22:25.

hearsay by definition because it is a previous statement by the witness when not under oath subject to cross-examination at the time. Kentucky Rules of Evidence ("KRE") 801(c). *See Wright v. Premier Elkhorn Coal Co.*, 16 S.W.3d 570, 572 (Ky. App. 1999). Yet litigants often introduce reports as exhibits without objection, especially when the witness has also testified about its contents.

KRS 403.290(2) permits family courts to consider written advice from experts about custody so long as the parties have the opportunity to question the experts. The family court complied with this statute. Both Kevin and Allison questioned Dr. Marvin.

If KRS 403.290(2) were to be interpreted as not overcoming a hearsay objection about such reports, a question we need not now answer, Kevin did not object to the introduction of the report on hearsay grounds. Rather, the objection was to the report's incompleteness which ironically resulted from Kevin's behavior causing the incompleteness of the process.

Kevin's main concern was apparently that the report was incomplete because it did not tell his side. Kevin complains, for example, that the evaluators did not look at his two-year record of therapy or consider any other mitigating factors. But nothing prohibited Kevin from introducing that evidence himself at the extension hearing to counter Allison's evidence. Dr. Marvin was explicitly clear to the family court that the report was not complete, and it lacked any

consideration of mitigating factors. The family court indicated that it understood the limitations of this evidence.

Even assuming for the sake of argument that admission of the report itself was in error, it would be harmless error in this instance. "Admission of incompetent evidence in a bench trial can be viewed as harmless error, but only *if the trial judge did not base his decision on that evidence,* or *if there was other competent evidence to prove the matter in issue*[.]" *Prater v. Cabinet for Hum. Res., Com. of Ky.*, 954 S.W.2d 954, 959 (Ky. 1997) (emphasis in original) (citations omitted). Most of what was contained in the report was also testified to directly by Dr. Marvin. Furthermore, the findings of fact issued by the family court focused on the testimony, not what was written in the report. The family court found Dr. Marvin's testimony to be credible, and "judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Asente*, 110 S.W.3d at 354.

There was no harm in the consideration of the written report in these circumstances. Dr. Marvin testified at length about the truly disturbing evidence of Kevin's personality and specific behavior described in the report. Dr. Marvin individually explained numerous factors which were relevant to the risk to which Allison and the children would be subject if the DVO was not extended. The testimony alone, which was subject to cross-examination by Kevin, was more than

-11-

sufficient to support the extension decision of the family court. The findings of the family court were not clearly erroneous, and extending the DVO was not an abuse of discretion.

Kevin also argues it was reversible error for the family court to fail to appoint a GAL to represent the children at the hearing. He cites the Kentucky Supreme Court case of *Smith*, *supra*, as support. In that case, a parent filed a petition for an Interpersonal Protection Order ("IPO") on behalf of her eleven-year-old child, to protect him against a neighbor who was thirteen years of age. The district court granted the IPO, and the respondent child, who was not represented by counsel at the hearing, appealed. The case ultimately made its way to the Kentucky Supreme Court, which vacated the IPO. The Supreme Court ruled that Kentucky Rules of Civil Procedure ("CR") 17.03 mandates the appointment of a GAL for any unrepresented minor party to an IPO or DVO action. *Id.* at 915.[6]

Any error in this regard was unpreserved. *Smith* became final in 2021. The parties' original DVO hearing took place in 2020, prior to the announcement of a requirement that a GAL be appointed. No party requested that the court appoint a GAL for the children at either the September 2023 hearing or the final March 2024 hearing.

---

[6] This requirement was recently codified in KRS 403.727(2), but this did not go into effect until July 2024, after the DVO's extension at issue here.

At no point *until this appeal* did Kevin mention a need for the children to have a GAL. Nevertheless, "even if improperly preserved, this Court has authority to review alleged errors not preserved at trial under CR 61.02 upon a determination that manifest injustice has resulted from the error. It is a rule rarely applied and only if the alleged error affects the substantial rights of the parties." *Mo-Jack Distrib., LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 907 (Ky. App. 2015) (internal quotation marks and citations omitted).

There is little case law about this issue after *Smith*, and the results from the subsequent cases are not as clear-cut as Kevin claims. In the only published case from this Court, it was stated "[w]e believe *Smith* requires that a minor child who is *listed as a party* on the petition for protection is in need of an appointed guardian." *Hamilton v. Milbry*, 676 S.W.3d 42, 47 (Ky. App. 2023) (emphasis in original). That case involved a hearing on an original DVO petition, not a motion for an extension of a prior DVO.

This Court ordered correction of any error in the failure to appoint a GAL by directing the appointment of a GAL before we would proceed with this appeal. The family court complied. The appointed GAL has apparently seen no need to provide any information for the children contrary to the position of their mother or in support of their father.

-13-

This situation is distinguishable from *Smith*, in that the children involved here were not respondents but were named on the Petitioner's side of the case. Allison adequately presented an argument about the best interests of the children. Kevin has not shown that any anticipated participation by a GAL would have caused a different result.

It was clear from the extension hearing that Allison's main concern was the protection of the children. Her testimony centered around her fear that Kevin would harm the children as a means of seeking revenge on her. She also stated she fears his lack of impulse control and inability to control his temper would lead to him harming their young twins. She presented a position for the children in this regard. We do not believe Kevin suffered a manifest injustice by the failure of the family court to appoint a GAL for the children.

## CONCLUSION

The Jefferson Family Court's findings of fact are supported by the evidence and are not clearly erroneous. The Jefferson Family Court acted within its discretion and committed no harmful error of law. For these reasons, we affirm the Order of the Jefferson Family Court extending the DVO in this case.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kevin Miles, *pro se*
Lexington, Indiana

BRIEF FOR APPELLEE:

John H. Helmers, Jr.
Melina Hettiaratchi
Louisville, Kentucky